## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **LOCKWOOD INTERNATIONAL, INC.,** | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WELLS FARGO BANK, N.A., WELLS FARGO SECURITIES, LLC, AND TRUSTMARK NATIONAL BANK,** | § | **CIVIL ACTION NO. 3:17-CV-00365** |
| *Defendants/Counterclaimants/ Third-Party Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LOCKWOOD ENTERPRISES, INC., LMG MANUFACTURING, INC., PIPING COMPONENTS, INC., LOCKWOOD HOLDINGS, INC., LH AVIATION, LLC, 7807 EAGLE LANE, LLC, AND MICHAEL F. LOCKWOOD,** | § | |
| *Third-Party Defendants.* | § | |

### THIRD-PARTY PLAINTIFFS' RESPONSE TO MICHAEL F. LOCKWOOD'S MOTION TO EXTEND STAY
### AND
### MOTION TO STRIKE UNSWORN DECLARATION

## <u>TABLE OF CONTENTS</u>

**Page**

I. SUMMARY OF RESPONSE ........................................................................ 1

II. BRIEF FACTUAL BACKGROUND .......................................................... 3

III. LEGAL ARGUMENT ............................................................................... 4

A.    Legal Standards Governing the Automatic Stay And Discretionary Stays............. 4

B.    No "Unusual Circumstances" Justifying an Extension of the Automatic Stay to Guarantor Michael F. Lockwood. ............................... 7

C.    No Discretionary Stay is Warranted.................................................... 13

D.    Guarantors Are Not Afforded the Protections of the Automatic Stay. ................. 16

IV. MOTION TO STRIKE UNSWORN DECLARATION OF MARK SPILLARD ........................................................................................ 18

V. CONCLUSION AND PRAYER ............................................................... 19

Third-Party Plaintiffs Wells Fargo Bank, N.A. and Trustmark National Bank (collectively, "Lenders") file their (1) Response to Third-Party Defendant Michael F. Lockwood's Motion to Extend Stay, and (2) Motion to Strike the Unsworn Declaration of Mark Spillard filed in support of Michael F. Lockwood's Motion to Extend Stay.

## I.  SUMMARY OF RESPONSE

Michael F. Lockwood ("Lockwood"), who executed a personal guaranty of the indebtedness of the bankruptcy debtors, seeks to extend the automatic stay to Lenders' suit against him individually for breach of his personal guaranty.  Lockwood seeks to extend the automatic stay based on two grounds:  (1) the "unusual circumstances" exception, and (2) a discretionary stay in the interests of justice and the control of the Court's docket.  Lockwood's argument fails on both counts for the following reasons:

**Unusual Circumstances Exception**.  The "unusual circumstances" warranting the application of this exception are rare, and certainly do not exist in this instance. Lockwood suggests that Lockwood International, Inc.'s ("LII") indemnity obligation to Lockwood under the LII Bylaws amounts to "unusual circumstances" which supports an extension of the stay to Lockwood because the Bylaws create a potential corporate indemnity by the bankrupt LII.  However, the LII Bylaws only cover indemnification for proceedings against Lockwood in his capacity as a Director, officer or employee of LII; they *do not* cover proceedings against Lockwood in his individual capacity, such as the guaranty case against Lockwood individually.  Indeed, the very nature of a personal guaranty is the undertaking by the individual to answer for the debt of another, in this case, the bankrupt debtors.

To somehow shift that individual liability to the corporate borrower via an alleged indemnity would effectively negate the very purpose of the personal guaranty, and would wholly defeat the protections sought by Lenders when they required Lockwood to guaranty the debt.  In sum, there is no potential indemnity obligation by LII to Lockwood, and the stay should accordingly not be extended to Lockwood.

Importantly also, the extension of the automatic stay to Lockwood based on the alleged indemnity **must** first be addressed and successfully adjudicated by the Bankruptcy Court *before* this Court can extend the automatic stay to the guaranty case.  Thus, Lockwood's request for a stay of the guaranty litigation is premature.

**<u>Discretionary Stay</u>**.  Lockwood seeks a discretionary stay based on the same indemnification argument made under the "unusual circumstances" exception (which fails), as well as an allegation of "unfairness" and an unsupported contention that the guaranty litigation "can" affect the administration of the bankruptcy estate.   Lockwood's arguments regarding alleged unfairness and impact on the bankruptcy estate should be addressed to the Bankruptcy Court in the context of a Section 105 injunction and are not appropriate for consideration by this Court since the Bankruptcy Court is responsible for the administration of the estate.  There is no basis for a discretionary stay in this case.

Lockwood has not cited to *any* case law in the Fifth Circuit where a court has stayed litigation against a non-bankrupt guarantor, and for good reason:  there are none. As discussed below, the courts in the Fifth Circuit have consistently refused to extend the

automatic stay to guarantors for the simple reason that it would be inequitable to lenders to deprive them of the bargained for agreement by the guarantor to answer for the debt of the borrowers.

## II.  BRIEF FACTUAL BACKGROUND

1.    On February 27, 2017, Lockwood executed a Guaranty, in which he personally "unconditionally guarantee[d] and promise[d] to pay" Lenders "any and all Indebtedness of Lockwood Enterprises, Inc., Lockwood International, Inc., LMG Manufacturing, Inc., and Piping Components, Inc., under the Credit Agreement (as the term is used in the Guaranty).  A true and correct copy of the Guaranty is attached as **Exhibit A**. The Guaranty is signed by "Michael F. Lockwood, individually." The Guaranty expressly contemplates that Lockwood's guaranty obligation is separate and independent from Borrowers' obligation, and that an action may be brought solely against Lockwood without the need to include or add the Borrowers.  Specifically, the Guaranty provides as follows in Section 3:

> 3.  SEPARATE ACTIONS; WAIVER OF STATUTE OF LIMITATIONS; REINSTATEMENT OF LIABILITY.   The obligations hereunder are independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other person, or whether Borrower or any other person is joined in any such action or actions. . . .

2.    On December 26, 2017, Lenders filed a Third-Party Complaint against Lockwood and several other guarantors for breach of their respective guaranties.  (Docket No. 5).  The Borrowers[1] and Guarantors[2], except for Lockwood, filed voluntary petitions

---

[1]   The Borrowers are:  Lockwood Enterprises, Inc., Lockwood International, Inc., LMG Manufacturing, Inc., and Piping Components, Inc.

for relief pursuant to Chapter 11 of the United States Bankruptcy Code.  Now, Lockwood requests that this Court extend the automatic stay to Lenders' suit against Lockwood, individually, for breach of his Guaranty.

### III.  LEGAL ARGUMENT

**A.      Legal Standards Governing the Automatic Stay And Discretionary Stays.**

3.      Section 362(a)(1) of the Bankruptcy Code provides for an automatic stay of any judicial "proceeding against the debtor." 11 U.S.C. §362(a)(1).  It is well settled that "the protections of §362's automatic stay are generally not extended beyond the debtor, because §362 'is rarely … a valid basis on which to stay actions against non-debtors.'" *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 308 (Bankr. S.D. Tex. 2015) (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001)); *see also Edge Petroleum Operating, Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 301 (5th Cir. 2007) ("Section 362(a) operates to stay only actions against bankruptcy petitioners and their property"); *Hamel-Schwulst v. Country Place Mortg. Ltd.*, 406 F. App'x 906, 911 (5th Cir. 2010) ("it is well-established 'that the protections of §362 neither apply to co-defendants nor preclude severance'"); *Lynch v. Johns-Mansville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) ("[i]t is universally acknowledged that an automatic stay of proceeding accorded by §362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with similar legal or factual nexus to the Chapter 11 debtor").

---

[2]    The Guarantors are:  Michael F. Lockwood, Lockwood Holdings, Inc., LH Aviation, LLC, and 7807 Eagle Lane, LLC.

      (i)      **Unusual Circumstances Exception.**

4.      One of the standards used by *bankruptcy courts* to expand the automatic stay to cover non-debtors is the "unusual circumstances" standard enunciated by the Fourth Circuit court in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Circuit 1986):

> "[T]here are cases [under 362(a)(1)] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants" but…in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be 'unusual circumstances' and certainly "something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties." This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

*See also Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F. 3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*). The party invoking the stay has the burden to show that it is applicable. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 722-723 (S.D. Tex. 2010).

5.      As more fully discussed below, Lockwood is not entitled to "absolute indemnity" by LII on account of any judgment against him on his personal guaranty. Additionally, before this Court can extend the stay to this litigation because of the alleged indemnity, LII and/or Lockwood must first raise and successfully adjudicate the indemnity issue in the Bankruptcy Court, which has not occurred here. Accordingly,

there are no "unusual circumstances" justifying an extension of the automatic stay, and any stay would be premature.

(ii)    <b><u>Discretionary Stay Standard</u></b>.

6.    District courts may exercise their discretion to stay a proceeding against non-bankrupt co-defendants "in the interests of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983); *Beran*, 747 F. Supp. 2d at 723.   However, this discretion is limited, and the proper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance.   *Wedgeworth*, 705 F.2d at 545.   In exercising the court's discretion, "a stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration."   *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (citing *Wedgeworth*, 706 F.2d at 545).

7.    As more fully discussed below, the indemnity argument cannot support a discretionary stay, and the other grounds invoked by Lockwood for a discretionary stay – fairness and effect on administration of the bankruptcy estate – are not properly before this Court and must be raised by LII in the Bankruptcy Court.

**B.**   **No "Unusual Circumstances" Justifying an Extension of the Automatic Stay to Guarantor Michael F. Lockwood.**

        **(i)**   **Lockwood Is Not Entitled To Indemnity From LII.**

8.     The "unusual circumstance" cited by Lockwood is the alleged indemnification obligation by LII to Lockwood for this guaranty case against Lockwood. Lockwood contends that because he is the "sole Director and President and CEO of each of the Debtor Entities and because each of the Debtor Entities is contractually obligated to indemnify him, a judgment on the Third-Party guaranty claim would be a judgment against the Debtor Entities."  *See* Lockwood's Motion at p. 3.

9.     At the outset, it should be noted that the Bylaws attached as Exhibit 1 to Lockwood's Motion are the Bylaws of LII only.  Thus, Lockwood's statement that "each of the Debtor Entities is contractually obligated to indemnify him" is incorrect and misleading.  Moreover, Exhibit 1 has a handwritten notation at the top of page 1 which indicates that the Bylaws were amended on August 2, 2013, yet Lockwood has failed to include the amendments to the Bylaws, which could possibly involve the indemnification rights in the Bylaws.

10.     Notwithstanding these deficiencies, Lockwood's indemnity agreement fails for the principal reason that Lockwood is not entitled to indemnity from LII for his personal contractual obligation under the Guaranty.  The indemnification provision in the Bylaws only covers proceedings against Lockwood in his capacity as a Director, officer, employee or agent of LII:

> Section 2.     Right to Indemnification.  Each person who was or is made a party or is threatened to be made a party to or is involved in any

Proceeding, <u>by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a Director, or an officer, employee, or agent of the corporation</u> whether the basis of such proceeding is alleged action in an official capacity as a Director or as an officer, employee, or agent or in any other capacity while serving as a Director, or as an officer, employee, or agent of the Corporation, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Texas Business Corporation Act and subject to its limitations and requirements, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), and subject to Section 1 of this Article VI, against all Expenses, liability, loss, judgments, fines, ERISA excise taxes or penalties, and amounts paid or to be paid in settlement reasonably incurred or suffered by, such person in connection therewith; . . .

(emphasis added).

11.    As noted above, Lockwood did not sign the Guaranty in his capacity as a director, officer, employee or agent of LII.  He signed it in his individual capacity as evidenced by the signature line:  "Michael F. Lockwood, individually".  The Bylaws by their express terms only provide indemnification for the personal liability of Lockwood incurred for acts performed in his capacity as a director, officer, employee or agent of LII, and not for any liability incurred where Lockwood, the Chief Executive Officer of the bankrupt parties, acts in his personal capacity.

12.    This indemnification issue was squarely addressed by the court in *Golisano v. Turek*, 2015 U.S. Dist. LEXIS 72559 at *8-9 (W.D.N.Y. Jun. 4, 2015), when the Court denied guarantor's request for indemnification from the company for his guaranty obligation:

Inasmuch as the action against the defendant Jerry Kessler is based upon a personal guaranty, the action is not brought against him "by reason of the

fact that he . . . was a director or officer of the corporation" [*9] within the meaning of that phrase as employed in Business Corporation Law §722(a). Accordingly, the Supreme Court properly denied the motion seeking indemnification pendente lite pursuant to Business Corporation Law §724 (*see*, *Dankoff v. Bowling Proprietors Ass'n*, 69 Misc.2d 658, 660, 331 N.Y.S.2d 109; *Spring v. Moncrieff*, 10 Misc.2d 731, 173 N.Y.S.2d 86; *Matter of P.J. Keating Co.*, 180 B.R. 18, 24-25; *see also*, 3 White, New York Corporations, §722.01, at 7-361 [13th ed]; Bishop, Law of Corporate Officers and Directors–Indemnification and Insurance, §3.11, at 66).

Relative to the specific facts of the case, the court in *Golisano* went on to state:

It is obvious that Turek would not have signed a guarantee for BlueTie had he not been involved with the company in some way.  However, Turek signed the guaranty as an individual and the guaranty contains no indication he was signing it as an agent of BlueTie.  In fact, the guaranty makes it clear that Turek was motivated to sign the guaranty because he "determined that executing this Guaranty is in [his] interest and to [his] financial benefit. . . ."  Continuing Guaranty 1.  Even assuming, for the sake of the motion, that he signed the guaranty because he was an officer of BlueTie, the guaranty makes it clear that JPMorgan was relying on Turek's personal assets, not BlueTie's, to back the loan.  If Turek incurs liability, should that be the outcome of this litigation, it would not be incurred because he was a director or officer of BlueTie.  In other words, any liability he might incur because of the guaranty, would not "arise as a result of the fact that [he is an] officer[] and/or director[] of the Corporation."  Blue-Tie By-Law Art. [*12] IV.  The Court finds that *Tilden* is directly on point and that BlueTie's By-Law provision does not authorize indemnification here for Turek's personal guaranty.

*Golisano,* 2015 U.S. Dist. LEXIS 72559 at *11-12; *see also In re P.J. Keating Co.* 180 B.R. 18, 24-25 (Bankr. D. Mass. 1995) (personal guaranty not executed as an incident to guarantor's service as an officer or director, and accordingly not subject to indemnification provision in by-laws).

13.     Just like the guaranty in *Golisano,* the Guaranty here makes clear that "[i]n [Lockwood's] judgment . . . , [Lockwood's] liability and obligation may reasonably be expected to benefit [Lockwood] directly or indirectly."  Exhibit A, Section 1 at p. 1.

9

Additionally, there is absolutely no indication in the Guaranty that Lockwood was signing it as an agent of the bankrupt debtors.  Signing the Guaranty was simply not part of Lockwood's duties as a Director, officer or employee of LII.

14.    If the Court were to accept Lockwood's suggestion that he executed the Guaranty in a representative capacity (which would arguably trigger an indemnification obligation), then the result would be that LII itself was guaranteeing its own indebtedness thus negating any purpose of the Guaranty.   *See PPO Check, Ltd. v. Midwestern Reg'l Med. Ctr.*, 2007 U.S. Dist. LEXIS 49791 at n. 1 (S.D. Tex. July 10, 2007) ("To treat [the borrower or debtor] as the guarantor as well as the borrower would negate the purpose of the guaranty.").

15.    For this basic reason – no right to indemnify – Lockwood's reliance on the case of *National Oilwell Varco, L.P. v. Mud King Prod., Inc.,* 2013 WL 1948766 (S.D. Tex. May 9, 2013) for the proposition that he is entitled to an extension of the automatic stay based on indemnification is misplaced.   *Mud King* was a trade secret misappropriation case where several defendants were sued in their capacities as officers and directors of the debtor entity.  The case did not involve any personal guaranty by any of the individual defendants.  The individual defendants sought a stay of the case against them based on the "unusual circumstance" standard because the claims against them were the same as the claims against the bankruptcy estate and the indemnification expenses would be to the detriment of other creditors.  The defendants also sought a discretionary stay.

16.     Recognizing that the scope of the §365 stay was principally within the bankruptcy court's bailiwick, the district court exercised its discretion to impose a temporary stay in the interest of justice because the limited record before the court indicated that the bylaws may create potential corporate indemnity obligations to one or more of the individual defendants, and the matter needed to be fully adjudicated by the bankruptcy court.  *Mud King,* 2013 WL 1948766 at 19-20.

17.     Here, there is *no* possibility that the Bylaws create a potential corporate indemnity obligation by LII to Lockwood for this personal guaranty litigation.  Thus, there is absolutely no basis or need for any kind of stay, discretionary, temporary or otherwise.

       **(ii)**     **<u>LII Must First Seek Extension of the Automatic Stay to Lockwood in the Bankruptcy Court.</u>**

18.     Lockwood's request in this Court to extend the automatic stay to him personally, also fails because the issue must first be addressed and successfully adjudicated by the Bankruptcy Court under 11 U.S.C. §105.  *See P.O'B Apollo Tacoma, L.P. v. TJX  Cos. (In reHouse2home, Inc.)*, 2002 U.S. Dist. LEXIS 18702 (N.D. Tex. 2002);  *see also Mud King*,  2013 WL 1948766 at 17 (recognizing that the scope of the §365 stay is principally within a bankruptcy court's bailiwick); *Fid. & Deposit Co. of Md. v. Tri-Lam Co.*, 2007 U.S. Dist. LEXIS 26293 at *7 (W.D. Tex. Apr. 9, 2007) ("If [Defendants] wish to avail themselves of the *A. H. Robins* exception, that request should be addressed to the bankruptcy court, not this court.").

19.     *P.O'B* involved a suit on a commercial lease agreement and a related guaranty of the lease.  Relying on *Arnold v. Garlock, Inc.*, 278 F.3d 426, the guarantor sought a stay of the guaranty litigation on the grounds that a contractual indemnity by the bankruptcy tenant in favor of the guarantor in connection with any liability arising under the lease, created such an identity of interest that the automatic stay should apply.  *P.O'B,* 2002 Bankr. LEXIS 962 at *14.

20.     At the outset, the court noted that "[i]f the removed action against Defendant was based solely on its guaranty of the Debtor's debt, it appears that the Debtor's automatic stay would not extend to Defendant in this action."  *P.O'B,* 2002 Bankr. LEXIS 962 at *13.  The court then went on to analyze *Arnold v. Garlock, Inc.* in the context of the indemnity claim by the guarantor, and concluded that the automatic stay would not apply to the indemnification claim raised by the guarantor without a successful adversary proceeding filed by the debtor in the home Bankruptcy Court, under 11 U.S.C. Section 105, extending the automatic stay.  The court specifically stated:

> Under *Arnold v. Garlock, Inc.*, 278 F.3d 426, it appears that if [tenant] filed an application for an 11 U.S.C. §105 injunction in the home Bankruptcy Court, then, depending on the record made, *Arnold v. Garlock* could be some authority to extend the stay to this litigation because of the indemnity.

Following further analysis, the Court concluded that:

> It appears that the better construction of the case law is that the automatic stay does not apply to an indemnification claim of the nature involved herein, without a successful adversary proceeding being filed in the home Bankruptcy Court, under *11 U.S.C. §105*, extending the automatic stay. *11 U.S.C. §362(a)(1)*; *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541. *Arnold v. Garlock, Inc.* states that "a bankruptcy court may invoke *§362* to stay proceedings against nonbankrupt co-defendants where" such close identity exists. *Arnold v. Garlock, Inc.*, 278 F.3d 426 at 436.  It may be

quibbling with the Fifth Circuit's use of words, but invoking *§362* appears to contemplate something more than passive reliance on a stay that is automatic.  Most of the cases discussing extension of the stay are cases where a *§105* adversary is involved.  *See also* the Fifth Circuit's caveats with respect to bankruptcy injunctions generally in *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d at 538 n.39; *see also Davis v. Life Investors Ins. Co. of Am.*, 2002 U.S. Dist. LEXIS 14383, 2002 WL 1784171 at *5, in footnote 2 hereinabove.

*Id.* at 20-21.

21.     Since, LII has not sought any relief in the Bankruptcy court to extend the automatic stay to the guaranty litigation in this case, there is no basis for *this* Court to stay the litigation.  The requirement that the debtor first seek relief in the bankruptcy court, is consistent with the policy that the automatic stay is for the benefit of the bankrupt debtor and *not* for the benefit of non-bankrupt parties.

## C.     No Discretionary Stay is Warranted.

22.     Lockwood also asks this Court to enter a discretionary stay of the guaranty litigation for the following three reasons:  (1) same indemnity argument made under its "unusual circumstances" request for the extension of the Section 362 automatic stay (which fails as more fully discussed above), (2) alleged unfairness to Lockwood, and (3) the guaranty litigation can allegedly affect the administration of the bankruptcy estate.

23.     <u>First</u>, relative to indemnity, Lockwood's failed "unusual circumstances" exception argument cannot form the basis for the issuance of a discretionary stay by this Court.  *See Tri-Lam Co.*, 2007 U.S. Dist. LEXIS 26293 at *9 (court declined to base a discretionary stay on *A.H. Robins*' "unusual circumstance" exception).  Lockwood once again cites to *Mud King* to support his discretionary stay request based on the

indemnification argument.  *See* Lockwood's Motion at p. 9.  However, unlike in *Mud King*, here there is unquestionably no right to indemnity which would support a discretionary stay to allow the Bankruptcy Court to adjudicate the indemnity issue. Assuming *arguendo* that Lockwood had a viable indemnity argument (which he does not), as discussed above, the Bankruptcy Court must first successfully adjudicate this issue in Lockwood's favor before this Court can issue a discretionary stay.  Neither LII nor Lockwood have initiated any proceeding in the Bankruptcy Court regarding the indemnity issue, and it is very possible that LII and Lockwood may never initiate such a proceeding given the weakness of the indemnity claim for Lockwood's personal guaranty liability.  Thus, Lockwood is effectively asking for an indefinite discretionary stay, which should be denied.

24.    Second, relative to the allegation of "unfairness" Lockwood has not cited any authority in support of this argument.  What is unfair and inequitable in this instance, is Lockwood's attempt to shrug his personal liability to Lenders under the guaranty and his futile effort to benefit from the bankruptcy filing by the debtors to the detriment of the Lenders.  Had Lockwood truly wanted a stay of the guarantor litigation against him, he could have certainly filed for bankruptcy protection individually.  It is important to note here also, that the bankrupt parties have engaged a Chief Restructuring Officer - Mr. Mark Shapiro with Glass Ratner - to assist with the re-organization efforts of the bankrupt companies.  Thus, Lockwood's suggestion that the burden somehow falls entirely on him, is misleading and untrue.

25.     <u>Third</u>, relative to the argument that the guaranty litigation "can" affect the administration of the bankruptcy estate, Lockwood's summary argument is not properly before this Court.  This argument must be raised in the Bankruptcy Court before the bankruptcy judge in charge of administering the bankruptcy estate.  *See In re Divine Ripe*, *LLC*, 538 B.R. at 310 (bankrupt debtor filed motion to extend automatic stay to sole member of debtor in bankruptcy court, which was denied because "the scant evidence and testimony taken at the hearing….do not include any hints of contributions from sole member); *see also In re Babcock & Wilcox Co*, 2001 U.S. Dist. LEXIS 69792 at *21 (E.D. La. May 18, 2001) (affirming bankruptcy court's determination that the suit against non-bankrupt defendant will not affect debtor's ability to reorganize where no evidence offered that suit would affect the likelihood of reorganization).  Thus, this Court cannot properly address the administration of the bankruptcy estate argument.

26.     Lockwood cites to the Fourth Circuit *A.H. Robins* decision for the very broad proposition that an action by a creditor against a guarantor will affect the administration of the bankruptcy estate.  *See* Lockwood Motion at pages 10-11.  A careful review of this quote by Lockwood reveals that the *A.H. Robbins* court was discussing the 1983 decision in *In re Brentano* while analyzing the bankruptcy court's jurisdiction.  *In re Brentano*, 27 B.R. 90 (Bankr. S.D.N.Y. 1983).  Notably and importantly here, the *In re Brentano* decision was overturned in 1984 on appeal to the Southern District of New York, and the appellate court concluded that the automatic stay had been improperly extended to the non-bankrupt guarantor, and the bankruptcy court should not have deprived the creditor from its contractually bargained for right to seek

judicial redress directly against the guarantor. *See In re Brentano, Inc*., 36 B.R. 90, 92 (S.D.N.Y. 1984).  Thus, Lockwood's summary argument relating to the administration of the bankruptcy estate (which in the first instance is not properly before this Court), is belied by the court's subsequent overruling of the extension of the automatic stay to the non-bankrupt guarantor.

27.    In sum, no discretionary stay is warranted here, and the Court should allow the litigation against the Lockwood to proceed.

**D.    <u>Guarantors Are Not Afforded the Protections of the Automatic Stay.</u>**

28.    Setting aside the "unusual circumstances" and "discretionary stay" arguments (which must fail), it is well settled and established in the Fifth Circuit that the automatic stay does *not* extend to non-bankrupt guarantors.  *See Browning Seed, Inc. v. Bayles*, 812 F.2d 999, 1004 (5th Cir. 1987) ("Bankruptcy law likewise permits a guarantor to be sued in state court while pending bankruptcy proceedings against the principal debtor preclude suit in state court against the debtor."); *GATX Aircraft Corp.*, 768 F.2d at 717 (appellate court reversed district court's extension of §362 stay to non-debtor guarantors, reasoning that "[to prevent or delay GATX from enforcing its rights in a situation foreseen by it and contractually provided for with each guarantor would be … legally inequitable"); *P.O'B Apollo*, 2002 U.S. Dist. LEXIS 18702 at *13 ("If the removed action against Defendant was based solely on its guaranty of the Debtor's debt, it appears that the Debtor's automatic stay would not extend to Defendant in this action."); *J.A. Davis Props., LLC*, 2014 U.S. Dist. LEXIS 67274 (W.D. La. May 15, 2014) (the mere fact that the co-defendant has guaranteed the bankrupt party's obligation

to the plaintiff is insufficient to warrant a stay against the co-defendant); *Weaver v. Texas. Capital Bank N.A*., 660 F.3d 900 at n. 3 (5th Cir. 2011) ("Further, as a guarantor, Weaver is not entitled to the protections of a debtor's automatic stay.").

29.    Furthermore, since recognizing the "unusual circumstances" exception in *A.H. Robins*, the Fourth Circuit has retreated somewhat and has held that the stay should not be applied to actions against a surety or guarantor of the debtor.  *See In re Calpine Corp.*, 365 B.R. 401, 408 (B.R. S.D.N.Y. 2007) (citing *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir. 1988) (refusing to extend bankruptcy stay to guarantor of note executed by bankrupt corporation, despite evidence that the guarantor was entitled to bring claims for contribution through bankruptcy proceeding)); *see also Cook v. Blazer,* 2016 U.S. Dist. LEXIS 79609, at 3-4 (W.D. Va. June 20, 2016) (compiling cases)).  In holding that "[t]here is nothing "unusual" about [a] guaranty agreement that would permit the guarantor to invoke the automatic stay", the Fourth Circuit reasoned that "[t]he very purpose of a guaranty is to assure the [creditor] that in the event the [debtor] defaults, the [creditor] will have someone to look to for reimbursement.  *Credit Alliance Corp.,* 851 F.2d at 121-22; *see also Widmer Eng'g, Inc. v. Five-R Excavating, Inc.,* 2016 Pa. Commw. Unpub. LEXIS 895 at *19 (Commw. Ct. Pa. Aug. 4, 2016) (refusing to extend automatic stay despite indemnity agreement because "a primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to ensure that creditors obtain 'the protection they sought and received when they required a third party to guarantee the debt.'").

30.     Thus, the Fifth Circuit, as well as the Fourth Circuit (which Lockwood relies heavily upon for the extension of the automatic stay), clearly hold that the automatic stay does not apply to guarantors.  Accordingly, this Court should not stay the guarantor litigation against Lockwood.

## IV.  MOTION TO STRIKE UNSWORN DECLARATION OF MARK SPILLARD

31.     In a transparent attempt to somehow transform Lockwood's personal guaranty to an alleged indemnifiable event under the LII Bylaws, Lockwood has attached the 'Unsworn Declaration of Mark Spillard (the "Declaration"), which contains irrelevant and hearsay testimony.  Spillard, a financial consultant to debtor LII, purports to testify as to the alleged reason(s) for the Lenders' request for the Guaranty from Lockwood, and Spillard's alleged "push back" to that request.  Lockwood then catapults this hearsay and irrelevant testimony to an argument that "[w]hile the guaranty is a personal obligation of Lockwood, its existence is "by reason of the fact" Lockwood was both a Director, Officer and employee of the Debtor at the time it was given."  Lockwood's Motion at page 8.

32.     Lockwood's transparent attempt to track the language from the LII Bylaws is faulty, and does not somehow transform the guaranty obligation into an indemnifiable obligation under the Bylaws.  The Bylaws provide for indemnification to "[e]ach person who…is made a party…in any Proceeding, by reason of the fact that he or she… is or was a Director, or an officer, employee…"  The alleged "reason" for the execution of the guaranty is completely irrelevant and of no consequence to the nature of the guaranty - a personal contractual obligation by Lockwood - and it does not somehow transform this

personal guaranty litigation to a suit "by reason of the fact" that Lockwood was a director.  As noted by the Court in *Golisano v. Turek* , the guarantor, a director of the company, would not have signed a guaranty for the company's debt had he not been involved with the company in some way.  However, the status of the individual guarantor vis-à-vis the company does not transform the guaranty into anything other than a personal guaranty which is not subject to indemnification under the bylaws.  *See Golisano*, 2015 U.S. Dist. LEXIS 72559 at *11.

33.    Spillard's statements in paragraphs 3, 4 & 5 of the Declaration should be stricken and not considered by the court because they contain inadmissible hearsay (see statements in paragraph 4 concerning Jennifer Norris' alleged statements to Spillard, and the statements in paragraph 5 concerning Spillard's alleged statements to Jennifer Norris).  Moreover, as noted above, any alleged evidence concerning the motives for the Guaranty are completely irrelevant and inconsequential to the nature of the Guaranty – a contractual personal obligation by Lockwood that is not indemnifiable under the LII Bylaws.  Thus, the Declaration should be stricken from the record and not considered by the Court.

## V.  CONCLUSION AND PRAYER

For these reasons, Third-Party Plaintiffs Wells Fargo Bank, N.A. and Trustmark National Bank respectfully request that the Court deny Third-Party Defendant Michael F. Lockwood's Motion to Extend Stay and allow the guarantor litigation against Third-Party Defendant Michael F. Lockwood to proceed.  Further, Lenders respectfully request that

the Court strike the Unsworn Declaration of Mark Spillard as irrelevant and impermissible hearsay.

Respectfully submitted,

By  */s/ Yasmin Atasi*

Yasmin Atasi
State Bar No. 10435150
yatasi@winstead.com
Scott F. Courtney Jr.
State Bar No. 24084384
scourtney@winstead.com
Angela Kao
State Bar No. 24105652
akao@winstead.com
**WINSTEAD PC**
600 Travis Street, Suite 5200
Houston, Texas 77002
(713) 650-8400
(713) 650-2400 (Fax)

**ATTORNEYS FOR DEFENDANTS, COUNTERCLAIMANTS, AND THIRD PARTY PLAINTIFFS, WELLS FARGO BANK, N.A., WELLS FARGO SECURITIES, LLC, AND TRUSTMARK NATIONAL BANK.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of February, 2018, a copy of the foregoing, and all exhibits and attachments thereto, was served on all counsel of record via the Court's ECF system.

*/s/ Yasmin Atasi*

Yasmin Atasi