UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| LOCKWOOD INTERNATIONAL, INC.<br><br>VS.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION; WELLS FARGO SECURITIES, LLC; and TRUSTMARK NATIONAL BANK<br><br>V.<br><br>LOCKWOOD ENTERPRISES, INC., LMG MANUFACTURING, INC., PIPING COMPONENTS, INC., LOCKWOOD HOLDINGS, INC., LH AVIATION, LLC, 7807 EAGLE LANE LLC, AND MICHAEL F. LOCKWOOD,<br>        *Third-Party Defendants.* | C. A. NO. 3:17-CV-365 |

**THIRD-PARTY DEFENDANT MICHAEL F. LOCKWOOD'S
RESPONSE IN OPPOSITION TO MOTION TO STRIKE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Third Party Defendant Michael F. Lockwood, and, for his Response in Opposition to the Motion to Strike Unsworn Declaration (D.E. 43), would respectfully show as follows.

Michael F. Lockwood is the sole Director, President and CEO of the Debtor Entities, and, pursuant to the similarly worded bylaws of the Debtor Entities and Texas law, the Debtors must indemnify and hold him harmless for expenses he incurs in connection with this proceeding, as well as against any judgment in the guaranty action. As shown in

Lockwood's Motion to Extend Stay (D.E. 41), Lockwood International, Inc. (LII)'s bylaws provide the corporation must indemnify its director; for example, Article VI, Indemnification and Interested Transactions, provides:

> **Section 2.  Right to Indemnification**:
>
> Each person who . . . is made a party . . . in any Proceeding, by reason of the fact that he or she is the legal representative, is or was a Director, or an officer, employee, or agent of the corporation whether the basis of such proceeding is alleged action in an official capacity as a Director, or as an officer, employee, or agent or in any other capacity while serving as a Director, or as an officer, employee or agent of the Corporation, ***shall be indemnified and held harmless*** by the Corporation to the fullest extent authorized by the Texas Business Corporation Act . . . .[1]

Moreover, Section 8.051 of the Texas Business Organization Code, the successor to the Texas Business Corporations Act, provides: "MANDATORY INDEMNIFICATION. (a) An enterprise ***shall indemnify a governing person***, former governing person, or delegate against reasonable expenses actually incurred by the person in connection with a proceeding in which the person is a respondent because the person is or was a governing person or delegate if the person is wholly successful, on the merits or otherwise, in the defense of the proceeding.  Additionally, Section 8.101 of the Code provides, "PERMISSIVE INDEMNIFICATION. (a) An enterprise ***may indemnify a governing person,*** former governing person, or delegate who was, is, or is threatened to be made a respondent in a proceeding to the extent permitted by Section 8.102 if it is determined in accordance with

---

[1] Ex. 1 to Motion to Extend Stay (D.E. 41-2) at 16 (emphasis added).

Section 8.103 that: (1) the person: (A) acted in good faith; (B) reasonably believed: (i) in the case of conduct in the person's official capacity, that the person's conduct was in the enterprise's best interests; and (ii) in any other case, that the person's conduct was not opposed to the enterprise's best interests . . ." Tex. Bus. Org. Code §§8.051, 8.101 (emphasis added). The Texas Business Organizations Act became effective in 2006, and replaced the Texas Business Corporations Act, which, at least as far as the indemnity of directors provisions are concerned, was substantially similar to Delaware's. See *In re Voluntary Purchasing Groups, Inc. Litig.*, 2002 WL 1269972, at *8 (N.D. Tex. June 5, 2002)("It appears that [art. 2.02–1(B)] the Texas Business Corporation Act contains indemnity provisions which are substantially similar to the Delaware provisions . . .").

Cases applying Delaware corporate law on this topic recognize that corporate directors' indemnity provisions should be broadly applied as a matter of public policy. *See, e.g., Witco Corp. v. Beekhuis,* 38 F.3d 682, 691, 692–93 (3d Cir. 1994) ("Courts have interpreted these indemnification rights very broadly. *E.g., Heffernan v. Pacific Dunlop GNB Corp.,* 965 F.2d 369, 375 (7th Cir.1992). Both the language and the purpose of Delaware's indemnification statute support interpreting its scope expansively") and (". . . there can be no doubt that there is a close nexus between the lawsuits filed by Witco and Dr. Beekhuis' former status as an officer and director of Halby"). *See further In re Miller*, 290 F.3d 263, 267 (5th Cir. 2002), in which the court applied Delaware law and observed:

3

> . . . . the available decisions establish a clear framework for analysis. They proceed from the proposition that Delaware intended to encourage capable people to serve as corporate employees, officers and directors by permitting corporations to shield them from liability for their official activities. Indemnification also ensures that corporate officials will and can defend themselves against unjustified suits and claims. *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del.1998). ***The cases thus broadly interpret "by reason of the fact" to require no more than a nexus between the corporate officers' or directors' official activity and the matter for which indemnification is sought.*** See *Witco Corp. v. Beekhuis*, 38 F.3d 682, 693 (3d Cir.1994); *Heffernan v. Pacific Dunlop GNB Corp.*, 965 F.2d 369, 374 (7th Cir.1992).

290 F.3d at 267 (emphasis added).

Contrary to the allegations made by Wells Fargo, Spillard's Unsworn Declaration (the "Spillard Declaration") is directly relevant to the issue of this Court staying the guaranty litigation until the indemnity issues are resolved in the bankruptcy court. Lockwood contends, and the Declaration supports, that Wells Fargo specifically linked Lockwood's guaranty to keeping Lockwood "interested and involved" in the companies he runs, as a director, officer, employee and agent. This fact is certainly relevant to Lockwood's claim that he gave the guaranty <u>because of his position</u> with the debtor entities, and so should be entitled to indemnity from them. This is of course relevant to a further inquiry in the bankruptcy court over how much the Debtors' and Lockwood's financial interests converge, and whether Lockwood is entitled to indemnity from debtors in that proceeding, and further support for why this District Court action should be stayed while the indemnity issue are resolved in the bankruptcy court. *See National Oilwell Varco, L.P. v. Mud King Prod., Inc.*, 2013 WL 1948766, at * 3 (S.D. Tex. May 9, 2013) (stay extended where potential corporate

indemnity obligations to one or more of the individual defendants existed by virtue of a formal indemnity relationship).

Contrary to Wells Fargo's citation to *Golisano v. Turek*, 2015 U.S. Dist. LEXIS 72559, 2015 WL 3522470 (W.D.N.Y. June 4, 2015), for the proposition that the motivation or a guarantor's signature is irrelevant, the Spillard Declaration is relevant because, as explained above, it provides context for why Lockwood signed the guaranty. In *Golisano*, "Turek signed the guaranty as an individual and the guaranty contains ***no indication he was signing it as an agent of BlueTie***." 2015 WL 3522470, at *5 (emphasis added). While Lockwood purportedly (and facially) signed the Guaranty in his individual capacity, he also did it "***in consideration of the credit or other financial accommodation described herein and extended or made to . . . LOCKWOOD INTERNATIONAL, INC, a Texas corporation*** . . . ." D.E. 43-1 at 1 (emphasis added). In sum, Lockwood, who was and is now a director, officer and agent of the debtor entities, after being presented with a guaranty to keep him "interested and involved" with debtors, and "in consideration of the credit . . . extended" to those debtors, signs the guaranty.

"A guarantor under Texas law is a 'so-called favorite of the law and as such, a guaranty agreement is construed strictly in [his] favor.' *Haggard v. Bank of Ozarks, Inc*., 668 F.3d 196, 199 (5th Cir.2012) (internal quotation marks and citation omitted). Thus, "[w]here uncertainty exists as to the meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor." *Coker [v. Coker]*, 650 S.W.2d at 394

n. 1 [(Tex. 1983)] (citations omitted)." *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013). "Under Texas law, parol evidence is admissible to clarify, explain, or give meaning to a writing that is facially incomplete, but only insofar as the evidence does not vary or contradict those terms of the writing that are complete and unambiguous." *Jack H. Brown & Co. v. Toys "R' Us, Inc.*, 906 F.2d 169, 175 (5th Cir. 1990). Here, the Spillard Declaration explains the terms of the guaranty by explaining that Wells Fargo specifically insisted keeping Lockwood "interested and involved" in the companies he ran as a director and officer. Hence, the declaration is relevant and admissible parole evidence that helps to explain the meaning and context of the guaranty agreement, as well as the capacity in which Lockwood signed it, as well as the circumstances under which Wells Fargo sought the guaranty. *See generally Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 658 (Tex. App.–Houston [1st Dist.] 1986, writ refused n.r.e.) (parol evidence is admissible to prove a signature by an agent in his representative capacity where the instrument names the person represented but does not show that the person signed in a representative capacity).

Also, because of Wells Fargo's present position (*i.e.*, that the bankruptcy stay should not cover Lockwood because he is a separate, individual guarantor) directly contradicts its prior insistence Mr. Lockwood's continued participation in the debtor's business was also intended to be secured by the guaranty. Whether that impacts Lockwood's obligations under the guaranty is not the point–it relates to the availability of indemnity to Lockwood by the

debtor entities.  As such, the Spillard Declaration is both relevant and admissible as impeachment evidence (Fed. R. Evid. 607), and may form the basis for an estoppel.

Finally, the Spillard Declaration does not contain extensive hearsay so as to make it improper or inadmissible evidence.  For example, in paragraphs 2 and 3, Spillard states that he (Spillard) was personally involved in negotiations leading up the signing of the relevant obligations, and he further states in paragraph 5 that he personally proposed an alternative to the guaranty to ensure security, but that his proposal was rejected in his presence, and instead, the lenders insisted on Lockwood's guaranty.  Paragraph 4 also contains Spillard's statement of what he did when he "pushed back" on the request that Lockwood be named an individual guarantor.  Spillard's statements in all paragraphs of the declaration are based on his first-hand, personal observations and confirm that Lockwood is involved in this proceeding "by reason of the fact of" his inextricable relationship with LII and the other Debtors.  Spillard's Declaration is based on his first-hand observations and is directly relevant both as to the meaning of Lockwood's guaranty, and the issue of whether the District Court action should be stayed to allow further development in the bankruptcy case of whether Lockwood is entitled to indemnity from the debtors.

For all these reasons, the Court should consider the Unsworn Declaration of Mark Spillard in its entirety and deny the Motion to Strike.

WHEREFORE, Third Party Defendant Michael F. Lockwood prays the Court deny the Motion to Strike, and for all other just and proper relief to which he may be entitled.

Respectfully submitted,

*/s/ Francis I. Spagnoletti*
Francis I. Spagnoletti
Texas SBN 18869600
fspagnoletti@spaglaw.com
David S. Toy
Texas SBN 24048029
dtoy@spaglaw.com
Eric J. Rhine
Texas SBN 24060485
erhine@spaglaw.com
SPAGNOLETTI & CO.
401 Louisiana, 8th Floor
Houston, TX 77002
Telephone:   713 653 5600
Facsimile:   713 653 5656

**ATTORNEYS FOR THIRD PARTY DEFENDANT MICHAEL F. LOCKWOOD**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing was automatically accomplished on all counsel of record through the CM/ECF Notice of Electronic filing, in accordance with the Federal Rules of Civil Procedure on this 16th day of February, 2018.

*/s/ Francis I. Spagnoletti*
Francis I. Spagnoletti