# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:17-cv-00365

LOCKWOOD INTERNATIONAL, INC., PLAINTIFF/COUNTER-DEFENDANT,

v.

WELLS FARGO BANK, N.A., WELLS FARGO SECURITIES, LLC, AND TRUSTMARK NATIONAL BANK, DEFENDANTS/COUNTER-CLAIMANTS/THIRD-PARTY PLAINTIFFS,

v.

LOCKWOOD ENTERPRISES, INC., LMG MANUFACTURING, INC., PIPING COMPONENTS, INC., LOCKWOOD HOLDINGS, INC., LH AVIATION, LLC, 7807 EAGLE LANE LLC, AND MICHAEL F. LOCKWOOD, THIRD-PARTY DEFENDANTS,

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Pending before the court are two motions: a motion to strike summary-judgment evidence (Dkt. 100) and a motion for summary judgment (Dkts. 93–94). The court denies the motion to strike summary-judgment evidence. For the reasons that follow, the court grants the motion for summary judgment.

### BACKGROUND

This is a complex commercial dispute. The claim at issue arises from a $72 million revolving line of credit which went into default. Michael Lockwood, the CEO and sole equity owner of several petrochemical companies, personally

1

guaranteed the debt, and Wells Fargo Bank and Trustmark National Bank ("the lenders") seek to recover the outstanding amount—about $58 million, plus interest. The lenders filed their third-party claims for breach of guaranty against Lockwood after he and the corporate borrowers sued on the allegedly wrongful conduct that led to the deal. Lockwood asserted thirteen defenses.[1] The lenders have moved for summary judgment on the personal guaranty, which is the only remaining issue in the case, and ask for the following:

- $58,710,456.26, which includes principal, accrued interest through August 20, 2019, letters of credit commissions and fees, and third-party expenses;

- per diem interest of $13,932.47 from August 21, 2019 until the entry of judgment;

- reasonable attorneys' fees and expenses to be determined at a later date;

- post-judgment interest; and

- costs.[2]

Lockwood raised just four of his thirteen defenses in his response to the lenders' motion: fraudulent inducement, unclean hands, equitable estoppel, and duress. Because the unclean hands and equitable estoppel arguments relate only

---

[1] These defenses are: (i) fraud/fraudulent inducement; (ii) equitable estoppel; (iii) failure or insufficiency of consideration; (iv) duress; (v) illegality; (vi) payment; (vii) waiver; (viii) lenders' failure to perfect any security interest; (ix) failure of conditions precedent; (x) set-off; (xi) failure to mitigate damages; (xii) unclean hands; and (xiii) failure to state a claim for which relief can be granted. Dkt. 46 at 14.

[2] In section 10 of the personal guaranty, Lockwood agreed to pay the lenders' costs and expenses, including reasonable attorneys' fees, in connection with the enforcement of any of the lenders' rights, power, or remedies under the guaranty. Dkt. 94-6 at 6 ¶ 10.

to equitable relief the lenders no longer seek, the court need not address these issues. *See Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp. 2d 795, 825 (S.D. Tex. 2009) (explaining that the unclean-hands doctrine is used against "an undeserving plaintiff's claim for equitable relief" (citations omitted)).

Lockwood contends that the personal guaranty is voidable because the lenders fraudulently induced him into signing it by misrepresenting its basis. Specifically, Lockwood contends that the lenders told him he would remain in control of the corporate borrowers' business when, four months after he signed the guaranty, the lenders ordered Lockwood and the corporate entities to cede control over the business to a chief restructuring officer.[3] In other words, Lockwood argues he was led to believe that if he signed onto the personal guaranty, he would have the authority to run the business and be accountable for its results. But he claims that once he signed the personal guaranty, the lenders took him out of management and gave him a role where he could not significantly affect business results. Lockwood states that he never would have signed a personal guaranty had he known that he would have no real authority over the business. Additionally, Lockwood argues that the guaranty is voidable because he was compelled to sign it as a result of economic duress.

---

[3] This change in the management also had the effect of reducing Lockwood's salary to $15 per hour from $40,000 per month.

The lenders respond that Lockwood's defenses are barred because he waived them by executing the guaranty, which includes a broad waiver and release clause.[4] The lenders also argue that, even if the personal guaranty were voidable, Lockwood ratified its terms by signing two subsequent forbearance agreements after the borrowers defaulted. In other words, the lenders contend that Lockwood twice agreed he had no defenses to payment.

## SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the

---

[4] The paragraph titled "GUARANTOR'S WAIVERS" reads, in part:

"Guarantor waives any defense to its obligations hereunder based upon or arising by reason of: (i) any disability or other defense of Borrower or any other person; (ii) the cessation or limitation from any cause whatsoever, other than payment in full, of the Guaranteed Indebtedness; . . . (v) any act or omission by Bank which directly or indirectly results in or aids the discharge of Borrower or any portion of the Guaranteed Indebtedness by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of Bank against Borrower . . . . Guarantor further waives all rights and defenses Guarantor may have arising out of . . . (B) any loss of rights Guarantor may suffer by reason of any rights, powers, or remedies of Borrower in connection with any anti-deficiency laws or any other laws limiting, qualifying or discharging the Guaranteed Indebtedness, whether by operation of law or otherwise . . . . By signing this Guaranty, Guarantor waives (i) each and every right to which it may be entitled by virtue or any suretyship law, . . . and (ii) without limiting any waivers set forth herein, any other fact or event that in the absence of this provision, would or might constitute or afford a legal or equitable discharge or release of or defense to Guarantor."

A separate paragraph titled "UNDERSTANDING WITH RESPECT TO WAIVERS; SEVERABILITY OF PROVISIONS" reads, in part:

"Guarantor warrants and agrees that each of the waivers set forth herein is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law . . . ."

record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). If the moving party meets its initial burden, the non-movant must then designate specific facts to show that there is a genuine issue of material fact. *Id.* Evidence is viewed in the light most favorable to the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

## ANALYSIS

The personal guaranty is governed by Texas law. In Texas, to prevail on a motion for summary judgment against a guarantor, a movant must establish: (1) the existence and ownership of the guaranty; (2) the terms of the underlying contract; (3) the occurrence of the condition on which liability is based; and (4) the guarantor's failure or refusal to perform the promise. *Norris v. Tex. Dev. Co.*, 547 S.W.3d 656, 659 (Tex. App.—Houston [14th Dist.] 2018, no pet.). These factors are not contested; Lockwood challenges the validity of the guaranty itself through the following four defenses.

### I.  Fraudulent Inducement

Fraudulent inducement can serve as an affirmative defense to a breach-of-contract claim if the party asserting the defense can establish: (1) the opposing party made a false material representation; (2) the opposing party either knew the representation was false when made or recklessly made a positive assertion without any knowledge of its truth; (3) the opposing party made the representation with the intention that it be acted upon; (4) the representation was in fact relied upon by the claimant, who then suffered injury. *Ernst & Young, LLP v. Pacific Mt.*

5

*Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). If a contract is fraudulently induced, "there is in reality no contract" because there was no assent to the agreement. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). A contract's merger clause does not preclude a fraudulent-inducement claim. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331–32 (Tex. 2011).

Viewing the evidence in the light most favorable to Lockwood, do the lenders' statements about his involvement with the business during the personal-guaranty negotiations raise a fact issue on whether the deal was secured through fraudulent inducement? This might be a close call if Lockwood had not executed the two subsequent forbearance agreements that ratified the terms of the personal guaranty.

"A contract which is voidable because it was the product of fraud is voided only if the defrauded party proves a right to avoid the contract and chooses to do so." *Harris v. Archer*, 134 S.W.3d 411, 427 (Tex. App.—Amarillo 2004, pet. denied). "If a party who has been induced by fraud to enter into a voidable agreement engages in conduct which recognizes the agreement as . . . binding after the party has become aware of the fraud, the party thereby ratifies the agreement and waives any right to assert the fraud as a basis to avoid the agreement." *Id.* (citing *Rosenbaum v. Texas Bldg. & Mortg. Co.*, 167 S.W.2d 506, 508 (Tex. 1943)). "Once a party ratifies an agreement, that party may not later withdraw the

ratification and seek to avoid the contract." *Id.* (citing *Missouri Pac. R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App.—Austin 2002, pet. dism'd)).

Lockwood argues that the two forbearance agreements do not preclude his fraudulent-inducement claim because he signed the agreements before he learned of the lenders' "bait-and-switch" plan to remove him from control of the business. Resp. 22. But the dates do not add up. Lockwood executed the personal guaranty on February 27, 2017. On June 28, 2017, Wells Fargo sent Lockwood a default notice letter requesting that the chief restructuring officer be given full authority to run the business. Lockwood signed the first forbearance agreement on August 16, 2017. His salary was reduced soon after. Then, Lockwood signed the second forbearance letter on September 29, 2017. Given that timeline, how can Lockwood maintain he did not know about the "bait-and-switch" until after he signed *both* forbearance agreements? Indeed, at argument on the motion, when asked what new developments occurred after signing the second forbearance agreement, Lockwood's counsel stated that "what was happening after that probably was also happening before."

Even giving Lockwood the benefit of the doubt on this point—including assuming the personal guaranty was in fact procured by fraudulent inducement— the fact that no material circumstances changed after Lockwood signed the second forbearance agreement clarifies that Lockwood ratified the terms of the personal guaranty and waived all defenses. In other words, Lockwood may have once had a valid claim for fraudulent inducement on the personal guaranty, but once he

7

ratified its terms and waiver of all his defenses after he became aware of the alleged fraud, he waived his right to raise it.

The fraudulent-inducement defense fails.

## II. Duress

Duress can serve as an affirmative defense to a breach-of-contract claim if the party claiming the defense can establish: (1) "a threat to do some act which the party threatening has no legal right to do;" (2) "some illegal exaction or some fraud or deception;" and (3) "the restraint must be imminent and such as to destroy free agency without present means of protection." *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980). Duress is a question of law, but whether it existed in a particular situation is generally a fact question attendant on the surrounding circumstances, including the mental effect on the party claiming the defense. *Wright v. Sydow*, 173 S.W.3d 534, 543–44 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The party asserting the defense has the burden to raise a fact issue on each of these elements. *Id.* at 544.

Lockwood insists he felt like he had a "gun to his head" when he signed the personal guaranty and two forbearance agreements; for had he not signed any one of those contracts, the business consequences would have been severe.[5] Resp. 17. And at argument, Lockwood's counsel stated that Lockwood signed the second forbearance agreement soon after Hurricane Harvey, which damaged his home.

---

[5] For example, the lenders could have accelerated the note—unfortunate for Lockwood, but something that the lenders had the legal right to do.

8

But besides focusing on Lockwood's mental state and emphasizing that Texas courts view duress as a fact-dependent issue, Lockwood does little else to raise a fact issue on any element of a duress claim.

The lenders argue that as a matter of law, the financial pressures Lockwood and the corporate borrowers faced do not rise to the level of duress. In other words, the sole fact that the borrowers were in default when the lenders requested the personal guaranty does not mean that Lockwood negotiated the contract under duress.

The lenders are correct in stating that the pressure of business circumstances or economic necessity does not, without more, constitute economic duress invalidating a contract. *See Berry v. Encore Bank*, No. 01-14-00246, 2015 WL 3485970, at *13 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). More importantly, Lockwood has not carried his burden to raise a fact issue to each element of a duress claim. This defense also fails.

* * *

For the reasons stated above, the court denies the motion to strike summary-judgment evidence (Dkt. 100) and grants the motion for summary judgment (Dkts. 93–94). Lockwood is ordered to pay:

- $58,710,456.26, which includes principal, accrued interest through August 20, 2019, letters of credit commissions and fees, and third-party expenses;

- per diem interest of $13,932.47 from August 21, 2019 until the entry of judgment;

- reasonable attorneys' fees and expenses to be determined at a later date;

- post-judgment interest; and

- costs.

The lenders may present evidence of their final attorneys' fees and expenses by filing a post-judgment motion that includes affidavit testimony or requesting a hearing within 14 days of this order.

Final judgment will be separately entered.

SIGNED on Galveston Island this 25th day of March, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE